1  **SAMPSON & ASSOCIATES**
   Bryan D. Sampson, Esq. (State Bar No. 143143)
2  2139 First Avenue
   San Diego, California 92101
3  (619) 557-9420/ Fax (619) 557-9425

4  Attorneys for Secured Creditor PROULX

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | BANKRUPTCY CASE NO. :99-33191-B7 |
| SARA NEWSOME BURNS, | **OPPOSITION TO DEBTOR'S OBJECTION AND MOTION TO AVOID JUDICIAL LIEN PURSUANT TO 11 U.S.C. §523(f)** |
| Debtor. | DATE: 1/31/00<br>TIME: 10:30 a.m.<br>CTRM: 4<br>JUDGE: Hon. Peter W. Bowie |

Secured Creditor BRADLEY PROULX (hereinafter "Creditor"), hereby submits his Memorandum of Points and Authorities in Opposition to Debtor SARA NEWSOME BURNS (hereinafter "Debtor") Objection and Motion to Avoid Judicial Lien Pursuant 11 U.S.C. § 522(f) and Federal Rules of Bankruptcy Procedure 4003(d) and 9014.

### BACKGROUND FACTS

1.  **The San Diego Judgment.**

This bankruptcy (as well as a prior Chapter 13 Bankruptcy, Bankruptcy Appeal, State Judgment and State Appeal) in reality involves a one-creditor State Court dispute between Debtor BURNS and Creditor PROULX. On October 30, 1998, Creditor PROULX obtained a judgment against Debtor BURNS. See Exhibit "1." The Judgment expressly granted Creditor PROULX a portion of Debtor's *Qui Tam* settlement with the United States Government in the amount of $193,333.33 plus $22,267.50 together with interest thereon from July 29, 1991 at the rate of 10% per annum. Id.

1   Creditor PROULX then secured the Judgment with an Abstract of Judgment, a
2   Secretary of State Lien, Turnover Order and a Lien on the Federal Action. See Exhibits "2 &
3   3." The liens were filed and perfected more than 90 days before the date of this Chapter 7
4   petition. See, e.g. Court Records and Exhibits "2, 3 & 4." Presently, the amount owed by
5   Debtor BURNS on the judgment exceeds $240,000. See Sampson Declaration.

6   Following the entry of the judgment, Debtor BURNS refused to pay any monies
7   whatsoever to Creditor PROULX. Her conduct throughout the various court actions has
8   recklessly increased the litigation in this matter, and completely ignored the current state of
9   the law. Because of Debtor BURNS' "amnesia" during a post-judgment debtor's examination,
10  secretion of assets, and refusal to obey a State Court Turnover Order, Creditor PROULX was
11  forced to undertake numerous post-judgment actions to recover monies from October 30,
12  1998 through today, including, but were not limited to:

- Filing and serving liens in the Federal Court Action;
- Bringing a Turnover Motion in Federal Court;
- Obtaining a Turnover Order;
- Filing an Assignment Motion
- Obtaining a Restraining Order on the *Qui Tam* monies;
- Filing an Objection to a frivolous Exemption Claim;
- Levying on the final payment due Appellant;
- Obtaining a Restraining Order on Appellant's Rental Income;
- Incurring costs to investigate and locate Appellant's assets;
- Objecting to Debtor's Chapter 13; and
- Obtaining an Order to Dismiss Debtor's Chapter 13.

19  See Sampson Declaration.

20  **2.    The Chapter 13 Action.**

21  On January 25,1999, Debtor BURNS filed a Chapter 13 bankruptcy petition. See
22  Exhibit "5". After a full trial in the bankruptcy court before the Honorable Louise DeCarl Adler
23  on the merits of the Chapter 13 case, the Bankruptcy Court determined that Debtor BURNS
24  was not qualified to pursue a Chapter 13 action. Thus, Debtor BURNS' bankruptcy action was
25  dismissed. See Exhibit "6". Since then, she filed an appeal to her Chapter 13 dismissal and
26  two motions to stay enforcement of the State Court Judgment, both motions of which were
27  denied. See Exhibits "7, 8 & 9."
28  ///

### 3. The Chapter 7 Action.

The instant Chapter 7 is part of Debtor BURNS' continuing efforts to unabashedly avail herself of bankruptcy's automatic stay to deny Secured Creditor PROULX as much monies as she possibly can. Debtor BURNS has already dissipated over $450,000 of the Qui Tam settlement monies from the United States government and is trying get away with it through abuse of the bankruptcy process. Here, Debtor BURNS is trying to reduce Creditor PROULX's liens against her real property. For the following reasons, her Motion to Avoid Judicial Lien pursuant to 11 U.S.C. §522(f) is incomplete and improper.

## LEGAL ARGUMENT

### 1. THE AMOUNT OF CREDITOR'S LIEN SUBJECT TO AVOIDANCE IS IMPOSSIBLE TO DETERMINE WITHOUT PROPER VALUATION OF DEBTOR'S REALTY.

As Debtor BURNS explains in her motion, judicial liens upon her real property may be avoided to the extent they impair her homestead exemption. 11 U.S.C. §522 (f) (2) sets out a mathematical formula to apply when determining whether a lien impairs the debtor's exemption. Liens impair an exemption to the extent that the sum of all liens on the property, including the lien under consideration, together with the value that the debtor could claim as exempt in the absence of liens on the property, exceed the value of the debtor's interest in the property if it were totally unencumbered. See In re Hanger, 217 B.R. 592 (9th Cir.BAP 1997) for an example of a court applying the "simple arithmetic test" of §522(f)(2)(A).

Debtor BURNS' statement of the law may be correct, but her application of the "simple arithmetic test" to her situation is flawed. First of all, she does not offer any credible evidence that the value of her real property is in fact $300,000. The amount of Secured Creditor PROULX's lien subject to avoidance is impossible to determine without an accurate valuation of Debtor BURNS' interest in her property. Given the short time to respond, and given the fact that the response period was over the holidays, Creditor PROULX could not timely hire an expert appraiser to value the property and subpoena records to determine the not just the principal amount of the lien, but the *payoff amounts* on the subject liens, which may be substantially lower than the liens, as discussed below.

- 3 -

If the true fair market value of the property is in fact more than $300,000, the amount of Creditor PROULX's lien subject to avoidance will be correspondingly less. A debtor's rights for lien avoidance purposes is determined as of the date of the filing of the bankruptcy petition. In re: Hsia, 183 B.R. 201 (N.D.Cal. 1995). This Chapter 7 Bankruptcy action was filed August 15th, 1999. See Court Records. As property values have risen in San Diego during 1999, Creditor PROULX believes the value of the property at issue is quite possibly more than debtor claims in her motion. An accurate appraisal of Debtor BURNS' real property is important to this bankruptcy as the amount of lien avoidance in this instance will directly effect the remaining value of Secured Creditor PROULX's claims against this and other properties of the bankruptcy estate.

**2. THE AMOUNT OF CREDITOR'S LIEN SUBJECT TO AVOIDANCE IS IMPOSSIBLE TO DETERMINE WITHOUT FIRST DETERMINING PAYOFF AMOUNTS OF OTHER LIENS ATTACHED TO DEBTOR'S RESIDENCE**

Debtor BURNS' application of the "simple arithmetic test" to her situation is further flawed because she does not accurately state (or provide credible evidence of) the amounts of the other liens that encumber her real property. As explained above, judicial liens may be avoided to the extent they impair a debtor's exemption. While her motion provides evidence of the amounts of the liens as they were *originally* recorded, it does not provide any evidence whatsoever of Debtor BURNS' current obligations upon these loans secured by her real property. If Debtor BURNS had made any payments on those loan obligations, then the encumbrances on the Debtor BURNS' property would be correspondingly reduced and the amount of Secured Creditor PROULX's claim subject to lien avoidance would also be reduced accordingly. Until debtor provides accurate evidence of the current status of her liens, the amount of lien avoidance sought after in her motion cannot be determined. As explained above, an accurate determination of the amount Creditor PROULX's lien subject to avoidance is important to this bankruptcy as that amount will effect value of Creditor PROULX's claims against other properties of the bankruptcy estate. Thus, this matter should be set for an adversary proceeding to properly determine Creditor's liens.

- 4 -

## III.

## CONCLUSION

Based upon the foregoing, Creditor PROULX respectfully requests this Court either deny Debtor's motion or set this matter for an adversary proceeding.

DATED: January 10, 2000      **SAMPSON & ASSOCIATES**

By: _____
Bryan D. Sampson
Attorney for Secured Creditor
BRADLEY PROULX